FILED
UNITED STATES DISTRICT COURT OFFICE

DISTRICT OF MASSACHUSETTS

**05   10209   JLT**

U.S. DISTRICT COURT
DISTRICT OF MASS.

MAGISTRATE JUDGE *New Judge*

| | |
|---|---|
| EUGENE STARSKI,<br>     Plaintiff<br><br>v.<br><br>ALEXANDER KIRZHNEV and<br>DAI SYNDITRADE LIMITED,<br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT
AND
JURY DEMAND**

RECEIPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK
DATE 2/2/05

## PARTIES

1.  Plaintiff, EUGENE STARSKI ("STARSKI"), is a United States citizen and an adult resident and citizen of the Commonwealth of Massachusetts, residing in Brookline.

2.  Defendant, ALEXANDER KIRZHNEV ("KIRZHNEV"), is a United States citizen and an adult resident and citizen of Connecticut, residing in Greenwich.

3.  Defendant, DAI SYNDITRADE LIMITED ("DAIS"), is a foreign corporation organized under the laws of the British Virgin Islands ("BVI") and has its principal office located at 202 Triumph House, 189 Regent Street, in London, England. Defendant KIRZHNEV established DAIS and at all relevant times was the Managing Director and one of the officers and/or directors of DAIS. DAIS was established by KIRZHNEV in March 2002 ostensibly to enter into and consummate the business dealings which are the subject of this Complaint.

## JURISDICTION

4.  Jurisdiction is proper under 28 U.S.C. § 1332 based on diversity of citizenship and the matter in controversy exceeds the sum specified. Plaintiff STARSKI is a resident and citizen of Massachusetts. Defendant KIRZHNEV is a resident and citizen of Connecticut and

defendant DAIS is a foreign corporation organized under the laws of BVI with its principal place of business located in London, England.  The amount in controversy exceeds $25,000,000.00, exclusive of interest and costs.

5.     The establishment of the business relationship and the agreement of the essential elements of the contract which form the nexus of the business relationship and which are central to this dispute all occurred in Massachusetts.

### FACTS COMMON TO ALL CLAIMS

6.     Plaintiff, STARSKI, was involved in the area of international trade and conducted much of his activities in Moscow, Russia.  STARSKI worked for Mercury Trading Company ("Mercury") in Moscow until 1997 and thereafter consulted independently with companies and individuals on how to establish trade deals in Russia.

7.     During his employment with Mercury, STARSKI developed a business relationship with Nguyen Thanh Hung and Nguyen Thi Phuong Thao, Vietnamese citizens engaged in the exportation of industrial products from Russia to Vietnam.  Nguyen Thanh Hung and Nguyen Thi Phuong Thao were husband and wife and were the principals in an enterprise named the Sovico Corporation ("Sovico") which had offices in both Moscow, Russia and Hanoi, Vietnam.

8.     STARSKI and Sovico developed a close working relationship over a seven year period and, through STARSKI, Sovico exported approximately $2,000,000.00 of Russian industrial products.

9.     In the early summer of 2000, the principals of Sovico approached STARSKI about developing contacts within the Russian Ministry of Finance to informally enter into

negotiations with the Vietnam Ministry of Finance to discuss the early payment by Vietnam of the debt owed to Russia for a loan during the Vietnam War.

10.    Through business contacts STARSKI had in the United States, STARSKI was introduced to defendant KIRZHNEV and entered into discussions about KIRZHNEV assisting him in finalizing an arrangement whereby the Russian Ministry of Finance would permit the Vietnamese Ministry of Finance to pay off roughly $1.5 billion as outstanding principal.

11.    In late summer 2000, KIRZHNEV met with STARSKI and others in Boston, Massachusetts to discuss the terms of a possible business arrangement.  KIRZHNEV told STARSKI that he had business contacts in the Russian Ministry of Finance and that settling sovereign debts was his specialty.  Moreover, KIRZHNEV advised STARSKI that he had attempted to bring both Russia and Vietnam together to negotiate the payment of this debt through a contact he had in Budapest, Hungary but that the arrangement had not materialized.

12.    Given the contacts STARSKI had with the Vietnamese company Sovico and KIRZHNEV's contacts with the Russian Ministry of Finance the two decided to join together to act as intermediaries and facilitators.  At the conclusion of the meeting STARSKI and KIRZHNEV agreed to be equal partners in any subsequent business arrangement involving the payment of the debt by Vietnam to Russia and to equally share any commissions or fees earned.

12.    On or about October 12, 2000, STARSKI and KIRZHNEV entered into a written contract which memorialized the verbal agreement they had made during their meeting in Boston a few weeks before. Exhibit 1 attached hereto is a true and accurate copy of this agreement. Under the terms of the written agreement, in exchange for STARSKI introducing KIRZHNEV to the principals of Sovico and if payment of the debt occurred from this contact, STARSKI was

3

entitled to compensation of either two and a half percent (2.5%) of the total value of any payment(s) or fifty percent (50%) of any commission or fee received, whichever was greater.

13.    The executed agreement was binding on both KIRZHNEV and any corporation, organization, firm or company he established to conduct business through Sovico or to utilize Sovico to negotiate payment of the Vietnamese debt to Russia. The agreement covered a period of five (5) years for which STARSKI was to be compensated from any transactions entered into by KIRZHNEV or any business entity KIRZHNEV established for that purpose.

14.    Moreover the agreement set forth that it was to be governed by the laws of the state of Massachusetts and in the event of litigation over a possible breach of the agreement or if it was necessary to enforce the provisions of the agreement, KIRZHNEV would be responsible for any attorneys fees and costs incurred by STARSKI.

15.    On or about October 15, 2000 STARSKI and Nguyen Thanh Hung/Sovico entered into an agreement which indicated that STARSKI would introduce Nguyen Thanh Hung/Sovico to KIRZHNEV, who was to act as an intermediary to the Russian Federation. Exhibit 2 attached hereto is a true and accurate copy of this agreement.  In addition this agreement stated that there was a contract between STARSKI and KIRZHNEV to share equally in any and all fees collected in the event of a successful transaction.

16.    On or about March 1, 2002, KIRZHNEV established DAIS as a Company incorporated under the laws of the British Virgin Islands. KIRZHNEV and Teimuraz Kartchava ("Kartchava") were named as directors of the new business entity.

17.    STARSKI introduced KIRZHNEV to Nguyen Thanh Hung and Nguyen Thi Phuong Thao of Sovico. KIRZHNEV, thru DAIS, entered into a written contract on or about April 4, 2002, with a representative of Sovico, Nguyen Canh Son regarding the "debt-swap"

between the governments of Vietnam and the Russian Federation. Exhibit 3 attached hereto is a true and accurate copy of that agreement. The agreement called for DAIS to pay Sovico a fee of $22,500,000.00 for representing the Vietnamese side of the transaction and for Sovico to assist DAIS in being appointed by the government or the Ministry of Finance of Vietnam as an authorized agent in implementing the debt-swap transaction.

18.    In addition, according to the agreement the parties agreed to use their best efforts to complete the transaction and to perform in a legal and ethical manner. Further, the contract states that all of DAIS' rights and obligations under the contract were to be jointly assumed by KIRZHNEV.

19.    Through the efforts of Sovico KIRZHNEV successfully met with and entered into a written contract with the Ministry of Finance for the Socialist Republic of Vietnam on or about April 24, 2002. Exhibit 4 attached hereto is a true and accurate copy of that agreement. Under the terms of this agreement, DAIS was to gain proper approval from the Russian Ministry of Finance and to deliver a corresponding cancellation of debt notice from the Russian Federation to the Vietnamese Ministry of Finance after an initial payment of approximately $500,000,000. The term of the agreement was to extend until the entire debt owed by Vietnam to Russia had been paid and cancelled in full.

20.    On or about July 15, 2002 the Vietnamese Ministry of Finance made a payment of approximately $500,000,000.00 to the Russian ministry of Finance, thereby canceling $500,000,000.00 of the debt. Exhibit 5 attached hereto is a true and accurate copy of an acknowledgement from the Deputy Minister of Finance of the Russian Federation dated September 16, 2002.

21.    On or about July 19, 2002 the Vietnamese Ministry of Finance issued an irrevocable standby letter of credit to DAIS in the amount of $75,000,000.00. Exhibit 6 attached hereto is a true and accurate copy of the telex from Vietcombank confirming this transaction.

22.    Shortly after the transfer of these funds to DAIS from Vietnam, DAIS made a payment of approximately $14,500,000.00 to Sovico. This payment was a full $8,000,000.00 short of the amount stated in the April 4, 2002 contract between the parties. Based on knowledge and belief, this $8,000,000.00 was never paid by either KIRZHNEV or DAIS to Sovico. Moreover, KIRZHNEV and/or DAIS failed to establish a joint account naming the principals of Sovico as co-signatories at the Meinl Bank in Vienna, Austria where the funds had been transferred by Vietcombank. This failure by KIRZHNEV was in direct violation of his agreement with the principals of Sovico and was intentionally misleading and fraudulent.

23.    Based on knowledge and belief, payments totaling approximately $1.0 billion have been made by the Vietnamese Ministry of Finance for partial cancellation of the debt and DAIS and/or KIRZHNEV were involved in and received a fee for their involvement in the facilitation of the debt-swap. Under the terms of the original agreement between STARSKI and KIRZHNEV, at the minimum 2.5% commission rate stated in the agreement, STARSKI should have been paid $25,000,000.00 by KIRZHNEV and/or DAIS. To date, STARSKI has not received any compensation from KIRZHNEV or DAIS for the assistance he provided.

## COUNT I – CONVERSION
(Claim Against KIRZHNEV and DAIS)

24.    Plaintiff realleges and incorporates by reference paragraphs 1 through 23 as if set out in full.

25.    The acts of KIRZHNEV and DAIS constituted a serious interference with plaintiff's right to control property.

26.    Wherefore, plaintiff demands judgment against KIRZHNEV and DAIS in a sum equal to his injuries and losses, plus attorney's fees and all expenses and costs of this litigation together with interest thereon.

## COUNT II – BREACH OF CONTRACT
(Claim Against KIRZHNEV and DAIS)

27.    Plaintiff realleges and incorporates by reference paragraphs 1 through 26 as if set out in full.

28.    Plaintiff and defendants entered into a written agreement.

29.    Consideration was involved in the agreement.

30.    Plaintiff performed and defendants breached the contract.

31.    Plaintiff sustained damages and economic losses as a result.

32.    Wherefore, plaintiff demands judgment against KIRZHNEV and DAIS in a sum equal to his damages and economic losses, plus attorneys' fees and all expenses and costs of this litigation together with interest thereon.

## COUNT III – UNJUST ENRICHMENT
(Claim Against KIRZHNEV and DAIS)

33.    Plaintiff realleges and incorporates by reference paragraphs 1 through 32 as if set out in full.

34.    Defendants received economic benefits from plaintiff's efforts without compensating plaintiff regarding same.

35.    As a result defendants were unjustly enriched.

36.    Wherefore, plaintiff demands judgment against KIRZHNEV and DAIS in a sum equal to his injuries and losses, plus attorneys' fees and all expenses and costs of this litigation together with interest thereon.

## COUNT IV – FRAUD
(Claim Against KIRZHNEV)

37.    Plaintiff realleges and incorporates by reference paragraphs 1 through 36 as if set out in full.

38.    KIRZHNEV verbally and in writing made assurances to plaintiff that he would split 50/50 any and all monies he received after expenses with regard to the debt-swap transaction.

39.    STARSKI reasonably relied on the verbal and written representations made by KIRZHNEV that KIRZHNEV would split all proceeds and fees earned from the debt-swap transaction.

40.    KIRZHNEV owned an expensive parcel of real estate on Andrews Farm Road in Greenwich, Connecticut at the time he entered into the contract with STARSKI.

41.    On or about July 26, 2001, after he entered into the contract with STARSKI but before any monies were received, KIRZHNEV divested himself of his Greenwich, Connecticut property for $5,000,000.00 and moved his family into rental premises.

42.    In addition, KIRZHNEV has intentionally liquidated and/or removed all of his significant financial assets located in the United States and has concealed them in as yet undetermined foreign accounts and off-shore locations.

43.    These actions by KIRZHNEV evidence an intent to renege on his obligations to STARSKI and were intentionally done to defraud STARSKI of any possible recovery or attachment of property or financial assets in preparation for and in anticipation of KIRZHNEV's failure to make any payments which were due to STARSKI.

44.    Plaintiff sustained damages and economic losses as a result of the fraudulent actions of KIRZHNEV.

45.     Wherefore, plaintiff demands judgment against KIRZHNEV in a sum equal to his damages and losses, plus attorneys' fees and all expenses and costs of this litigation together with interest thereon.

## COUNT V – VIOLATION OF M.G.L. c. 93A
(Claim Against KIRZHNEV and DAIS)

46.     Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as if set out in full.

47.     Plaintiff and defendants entered into a business arrangement in the course of trade or commerce and executed a written contract with respect to their mutual performances and consideration.

48.     Defendants knowingly, willfully and in bad faith breached that contract after the plaintiff had performed his obligations under the contract.  That breach constituted an unfair or deceptive practice under M.G.L. c.93A, §11.

49.     Defendants were notified of these alleged unfair or deceptive acts but defendants tendered no reasonable resolution of the dispute.

50.     Plaintiff suffered economic losses and injuries as a result of the defendants' unfair and deceptive practices.

51.     Wherefore, plaintiff demands judgment against KIRZHNEV and DAIS in a sum equal to his injuries and losses, plus attorneys' fees and all expenses and costs of this litigation together with interest thereon.  Plaintiff also seeks multiple damages as allowed under the statute for the unfair and deceptive practices of the defendants.

WHEREFORE, the plaintiff requests that this Court award him the following relief:

A. Enter judgment in his favor against each of the defendants in an amount warranted by the evidence at trial;

B. Direct the defendants to make the plaintiff whole for all compensation he would have received but for the defendants' unjustified conduct;

C. Direct the defendants to pay plaintiff compensatory and multiple damages for the injuries suffered as a result of defendants' unfair and deceptive business practices;

D. Award reasonable attorneys' fees and costs as provided by M.G.L.c. 93A as well as under the contract executed between the parties; and

E. Grant such other and further relief as this Court deems necessary and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

Respectfully submitted,
EUGENE STARSKI
By his attorney,

Seth S. Stoffregen (BBO# 567900)
Chatham Center
29 Crafts Street, Suite 500
Newton, MA 02460
(647) 332-1300

Dated: February ___, 2005

_____ October12, 2000

## Introduction Non-Circumvention Fee Agreement

1.    This is to confirm that Mr. Alexander Kirzhnev of Greenwich Connecticut, hereinafter referred to as "Signatory", hereby agrees that he directly or indirectly, or his corporation will not make any contact with, deal with, or otherwise engage in any transaction with SOVICO CORPORATION of Hanoi Vietnam and Moscow Russia and its principals: Mr. NGUYEN THANG HUNG and Mrs. NGUEN THI PHUONG THAO individually, or any institutions, investment bank, trusts, corporation or individuals introduced directly or indirectly by      Mr.Eugene Starski of Brookline Massachusetts with out his knowledge and permission.This agreement is also effective and binding on the signatures, their heirs, successors, assigns and/or designee(s) now and for the life of this agreement.

2.    By signature below and execution of this agreement, each of the named signatories, separately and individually, for themselves and their associates confirm that the entity, corporation, organization, firm, company or individual of which the signee is party to, member of, principal agent for, employee or otherwise, and hereby bound by this agreement. 

3.If any transaction takes place for the financial benefit of the signatory and/or his assignee(s) as a result of this introduction,
Mr.Eugene Starski is entitled to compensation equal to two and a half(2.5%) percent of the total value of the transaction or fifty (50%)
Percent of a commission/fee received, which ever is greater, to be paid
By the signatory.

4.This agreement is a perpetuating agreement for five (5) years for the date of affixed below, and is to be applied to any and all transactions examined by the signatory, negotiated or renegotiated, as well as to the initial transactions, regardless of the outcome of the project. The signatory hereby confirms that the identities, banks, investment banks, lending institutions, corporations, entitles, individuals, trusts, lenders or borrowers, buyers or sellers are the property and the contacts of___Eugene Starski_____ and shall remain so and in completely confidential manner for duration of this agreement.

5. This agreement shall be governed and interpreted in accordance with the laws of the State of Massachusetts. The transmission of this agreement by fax shall be deemed a legal binding transmission. This agreement cannot be changed or terminated by each of the parties with out giving sixty (60) days written notice to the other by Certified Mail, Returned Receipt Requested. In the event litigation is necessary to enforce any provisions of this agreement, Mr. Eugene Starski shall be entitled to all costs and expenses of that action, including attorney's fees.

Fax signature is acceptable for both signing parties.

Each person signing understands, accepts and agrees to the above conditions.

The parties executed this agreement on this 12 day of October 2000.

By:

Mr. Eugene Starski

By:

Mr. Alexander Kimbrey

# MEMORANDUM OF UNDERSTANDING

October 15, 2000

This Memorandum will confirm our understanding of the relationship between Mr. Eugene Starski (and his Group) (**Party A**) and Mr. Nguyen Thanh Hung (and his Group) (**Party B**):

1. We confirm that Party A were responsible for the introduction of Mr. Alexander Kirzhnev (and his Group) to Party B.

2. We confirm and are aware that Party B is a part to an "Introduction Non-Circumvention Fee Agreement" executed on October 12, 2000 between Mr. Alexander Kirzhnev and Mr. Eugene Starski where they had agreed to share any and all fees in the event of any successful transaction with Party B. We also confirm that Party B will not compensate fees of Party A in connection with any and all transactions involving Mr. Alexander Kirzhnev.

3. We confirm that we will start our first transaction as a "Debt-swapt" between Russian Federation and Socialist Republic of Vietnam.


**Party A**

Mr. Eugene Starski

~~**Party B**~~

Mr. Nguyen Thanh Hung




**SOVICO CORPORATION**

Dr. NGUYEN THANH HUNG

Chairman

Vietnam:
Hanoi: 18 Phan Boi Chau Street
Tel: (84-4) 8252266 - 8224853/Fax: 8249737
E-mail: Sovico.hn@hn.vnn.vn
Ho Chi Minh City: Saigon Trade Center Bldg
Fl 17-Unit 1707, 39 Ton Duc Thang, Dist 1
Tel: (84-8) 9101502/Fax: 9101501
E-mail: Sovico@hcm.vnn.vn

Russia, 125047 Moscow
1 - Tverskaya Jamskaya St
Tel: (7-095) 2518950 - 2514..  ..ax 2506.4
E-mail: Sovico@aha.ru/Telex.. ..x11 50
Singapore 068882, # 13-02 MA..  ..scano
50 Robinson Road
Tel: (65) 2277318, 2272001/Fax  ..703.9
E-mail: Sovico@pacific.net.sg

# CONTRACT

This Contract (the "Contract") is entered into this 4th day of April (the "Effective Date"), 2002, in Moscow, Russia, by and between:

**DAIsynditrade Limited BVI**, having its address at 202 Triumph House, 189 Regent Street, London, W1R7WB, United Kingdom (hereinafter "DAIsynditrade") represented by Mr. Alexander Kirzhnev, citizen USA, holder of passport number 140966278 issued on December 23, 1998, by the Passport Agency of Stamford, its duly authorized representative,

and

**Mrs. Nguyen Thi Phuong Thao**, an individual, citizen of Vietnam, holder of passport number CV/DQ0029041 issued 27/01/2000 TLSQCHXNCN Vietnam, represented by **Mr. Nguyen Canh Son**, holder of passport number P0637832 issued on September 12, 2001 by the Embassy of SRV in Russia (collectively hereinafter referred to as "Son"),

If and when appropriate, the above-mentioned Parties are hereinafter referred to individually as "Party" and collectively as "Parties."

In consideration of the mutual promises, consideration, and covenants contained herein, the Parties hereby agree as follows:

## I.    Transaction Description

DAIsynditrade, representing the Russian-side of the transaction, and Son, representing the Vietnamese-side of the transaction, are arranging a "debt-swap" transaction geared towards the reduction/cancellation of Vietnamese debt to Russia of five hundred million dollars ($500,000,000 USD) between the Ministry of Finance of Vietnam and the Ministry of Finance of the Russian Federation. DAIsynditrade may receive fees/profits if the proposed tranche of five hundred million dollars ($500,000,000 USD) is completed between the respective governments. The Parties will share the fees/profits as outlined below in Section II (A)(1).

Mr. Nguyen Canh Son, representing Mrs. Nguyen Thi Phuong Thao, shall be sharing signatorial responsibilities with Mr. Alexander Kirzhnev, representing DAIsynditrade, on a bank account to be established at the Union Bank of Switzerland (the "Account"), details of which are to be documented additionally, until the close of the Debt Swap.

Mr. Nguyen Canh Son, representing Mrs. Nguyen Thi Phuong Thao, shall also be appointed a directorship of DAIsynditrade until the close of the Debt Swap.

## II.    Obligations of the Parties

A. **DAISYNDITRADE'S OBLIGATIONS.** Subject to the terms and conditions of this Contract, DAIsynditrade shall take all actions necessary to facilitate the Debt Swap, including:

1. Open the Account with Son as co-signatory, entitling Son to share fees of the Debt Swap:

   a. Son will collect twenty-three million and five hundreds thousands dollars ($22,500,000 USD) if the sum of all tranches of cancelled debt equals five hundred million dollars

($500,000,000 USD); or

    b. Should the sum of all closed tranches of cancelled debt not equal five hundred million dollars ($500,000,000 USD), DAIsyndtrade will pay Son a pro-rata fee calculated from the sum of all tranches of cancelled debt equal to four and five tenths percent (4.5%) of the nominal value of cancelled debt.

2. Appoint Mr. Nguyen Canh Son, representing Mrs. Nguyen Thi Phuong Thao, a directorship of DAIsyndtrade, until the close of the Debt Swap.

3. After having received a mandate from Vietnam the company ensures signing a proper agreement with the Ministry of Finance of Russian Federation within 15 (fifteen) days.

B. SON'S OBLIGATIONS: Subject to the terms and conditions of this Contract, Son shall take all actions necessary to facilitate the Debt Swap, including, but not limited to:

Ensuring that a mandate will be issued by May 1, 2002, by the Vietnamese Government or Vietnamese Ministry of Finance appointing DAIsyndtrade as an authorized agent in implementing the Debt Swap transaction.

C. PARTIES' JOINT OBLIGATIONS:

1. Execute their obligations in accordance with all application laws, regulations, decrees, notices and other legal and administrative requirements.
2. Make available to each other upon request full information on all individuals and companies that are assisting in fulfilling their obligations.
3. Both parties agree as it concerns this particular operation only one account at UBS shall be established on behalf of the company.

## III.    Term

A. TERM: The term of this Contract shall be from the Effective Date until the close of the Debt Swap. All obligations of the Parties, including but not limited to, Son's joint-status on the Account, Son's directorship, and DAIsyndtrade's obligation to share fees, shall be terminated on the close date of the Debt Swap.

## IV.    Miscellaneous

A. INDEPENDENT PERFORMANCE: Nothing in this Contract shall be construed to create a labor or employment relationship between the Parties. The Parties are solely responsible for all of their business and corporate operations and for the payment of all expenses, fees, and performance of all governmentally required reporting acts.

B. CONSULTATION, INDEMNITY, DISCLOSURE: The Parties agree to use their best efforts to fulfill their obligations. The Parties agree to perform in a legal and ethical manner and to indemnify and hold each other harmless from any legal or ethical breach of law or policy in any jurisdiction in which they perform. Neither Party will withhold counsel or advice that they deem to be in the best interests of any other Party.

C. TAXES: The Parties shall be responsible for payment of any applicable taxes for any consideration or payments made accordance with this Contract.

D. ADDRESSES:

1. All notices required to be given hereunder shall be in writing and shall be directed as follows:

To: DAIsynditrade
202 Triumph House
189 Regent Street
London W1R7WB United Kingdom
tel: 0207-287-1700
fax: 0207-287-3310

To: Nguyen Canh Son
1-st Tverskaya-Jamskaya Str., #30
Moscow, Russian Federation
tel: 7-095-2514900
fax: 7-095-2509044

2. The above addresses may be changed by a Party at any time by giving the other Party fifteen (15) days prior written notice.

E. In case of impossibility of performance under this Contract by DAIsynditrade (dissolution of a company, inability to pay, civil incapacity etc.), all rights and obligations of DAIsynditrade under this Contract devolve from DAIsynditrade to Mr. Alexander Kirzhnev.

F. NON-EXCLUSIVITY: Nothing in this Contract shall be deemed to restrict or prejudice the rights of either Party to enter into similar service Contracts with third parties.

G. ASSIGNMENT; SUCCESSORS AND ASSIGNS: Neither this Contract, nor any right or obligation hereunder, may be assigned or otherwise conveyed by either Party without the prior written consent of the other Party.

H. APPLICABLE LAW – DISPUTES: This Contract shall be governed by and construed in accordance with the laws of England, excluding its conflicts of law provisions. If any dispute claim (a "Dispute") should arise hereunder, the Parties agree as follows:

1. Either Party shall give prompt written notice to the other Party as to the existence of any Dispute arising out of or in connection with this Contract. The Parties shall attempt to settle the Dispute by mutual discussions promptly, equitably, and in a good faith manner. If the Parties fail to resolve the Dispute, each Party shall have the right to institute arbitration proceedings in accordance with the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules in force at that time (the "UNCITRAL Rules"). In the event of a disagreement between the UNCITRAL Rules and the provisions of this Contract, the provisions of this Contract shall prevail.

2. The Dispute shall be resolved by arbitration by a panel of three (3) arbitrators appointed under the UNCITRAL Rules. The claimant Party shall appoint one arbitrator and the respondent Party shall appoint one arbitrator, and the two arbitrators so appointed shall appoint the third arbitrator in accordance with the UNCITRAL Rules. In the event of an inability to agree on a

third arbitrator, the appointing authority shall be the Arbitration Institute of the Sweden Chamber of Commerce, Stockholm Sweden.

3. All arbitration proceedings shall be conducted in Stockholm, Sweden, in the English language. The decision of the arbitrators shall be made by majority vote and shall be in writing. The decision of the arbitrators shall be final and binding upon the Parties and may be enforced by any court of competent jurisdiction and may be executed against the person and assets of the losing Party in any jurisdiction.

I. PUBLIC ANNOUNCEMENTS: Except as required by applicable law or regulation, the Parties agree that no public announcements or other third party disclosures will be made regarding the relationship between DAIsyndtrade and Son, or any Contracts referenced herein, unless both Parties give their prior written approval.

J. CONFIDENTIAL INFORMATION: The Parties agree not to disclose to any third Party and not to use, except for the purpose of this Contract, any technical or commercial information of a confidential nature made available to either of the Parties by the other Party or which either Party may have learned in the course of this Contract. All such information shall be returned to the disclosing Party at its request upon termination of this Contract. The above provision shall survive for five (5) years any termination of this Contract. The Parties shall assist one-another in executing a form of non-disclosure/non-competition agreement prior to disclosing any information about the Debt Swap to any third party.

K. FORCE MAJEURE: Neither Party shall be liable or accountable to the other for any failure, delay or service interruption due to cases or events, foreseeable or unforeseeable, reasonably beyond their control, including, but not limited to acts of nature, strikes, lockouts, riots, acts of war, epidemics, government regulations imposed after the fact, fire, communications line failures, failure of supplies, power failures, earthquakes or other disasters. The Party prevented from rendering performance must notify the other Party immediately and in detail of the commencement and nature of such circumstance and the probably consequences of it. A Party shall be deemed prevented from performing if performance has become impossible, dangerous, prohibited by law, or commercially impractical.

L. SURVIVAL OF OBLIGATIONS: Obligations under this Contract, which by their nature would continue beyond the termination, cancellation or expiration of this Contract, shall survive the termination, cancellation or expiration of this Contract.

M. SEVERABILITY: If any provision of this Contract or the application thereof is held invalid or unenforceable to any extent, and the deletion thereof would not adversely affect the receipt of any material benefit by either Party, the remainder of this Contract shall not be affected thereby and shall be and remain fully enforceable to the extent permitted by law.

N. ENTIRE CONTRACT: This Contract constitutes the entire Contract between the Parties pertaining to the subject matter hereof and supersedes all prior Contracts, notes, memoranda, negotiations, discussions and understandings, written or oral, between the Parties. There are no representations, warranties, conditions, other Contracts or acknowledgements, whether direct or collateral, or express or implied, that form part of or affects this Contract.

O. AMENDMENT: This Contract may be amended or supplemented only by a written Contract signed by the duly authorized representatives of each of the Parties.

Dated: April 15, 2002
Executed in Moscow, Russ

## APPENDIX TO THE CONTRACT
## SIGNED ON APRIL 4, 2002 BETWEEN DAISynditrade and Mrs. Nguyen Thi Phuong Thao.

DAISynditrade Limited BVI, having its address at 202 Triumph House, 189 Regent Street, London WIR7WB, United Kingdom, (hereinafter "DAIS") represented by its Director, Mr., ALEXANDER KIRZHNEV, US citizen, passport number 140966278, issued on December 23, 1998 in Stamford CT, USA,

and

Mrs. NGUYEN THI PHUONG THAO, an individual, citizen of Vietnam, holder of passport number CV/DQ 0029041, issued on January 27, 2000 TLSQCHXNCN Vietnam, represented by Mr. NGUYEN CANH SON, citizen of Vietnam, holder of passport number P0637832, issued on September 12, 2001, by Vietnamese Embassy in Russia hereinafter SON).

All above named parties hereby agree as follows:

I. AMENDMENTS
In Paragraph II "Obligations of the Parties", Section A, Clause "A" shall be amended to read and mean as follows: Son will collect 22500000 (twenty two and a half million US dollars) if sum of all tranches of cancelled Vietnamese debt equals five hundred million US dollars.

II. Paragraph II, Clause "B", "Son's Obligations" whole clause is amended and shall read as follows:
B. Son's obligations: Son undertakes full responsibility for ensuring that a mandate is issued by the Vietnamese Government or the Vietnamese Ministry of Finance appointing DAIS as its authorized agent in implementing of the Debt Swap transaction during 20 days after signing of Agreement of debt reduction and cancellation of Vietnamese debt before Russian Federation between the Vietnamese Ministry of Finance and DAIS.
Son will not communicate orally or in writing without explicit consent of other directors of DAIS to any governmental entity involved in this transaction. Son understands that he in no way has any right in committing the Company in any contractual and financial form or manner unless such action is required of him and therefore pre-approved by the Directors explicitly in writing.

Paragraph IV. Miscellaneous.
Clause "F" shall read: "This contract is exclusive between the parties".

    As for the rest text of the Contract of the April 4, 2002 remains without alterations.

    The present Appendix constitutes an integral part of the Contract of the April 4, 2002.

    This Appendix shall be made in four (4) originals in the English language, in twos for each Party. Each original shall have equal legal force.

| | |
|---|---|
| **Mrs. NGUYEN THI PHUONG THAO** | **DAI Synditrade BVI** |
| 10 Sredniy Kondratievskiy Per., | 202 Triumph House |
| Moscow, Russia | 189 Regent Str. |
| Tel. 007-095-253-66-14 | London WIR7WB UK |
| | Tel. 44-02-287-17-00 |
| | Fax. 44-02-287-17-10 |
| By: | By: |
| Mr. NGUYEN CANH SON | Mr. Alexander Kirzhnev |

# AGREEMENT

### Between

## The Ministry of Finance of the Socialist Republic of Vietnam

### And

## DAI Synditrade Limited

Based on the Memorandum of Understanding between representatives of the Ministry of Finance of the Socialist Republic of Vietnam and the Ministry of Finance of the Federation of Russia signed in Hanoi, Vietnam on March 27, 2002,

The Ministry of Finance of S.R Vietnam (hereinafter referred to as VMOF) domiciled at 8 Phan Huy Chu Street, Hanoi, Vietnam,

and

DAI Syndítrade Limited (hereinafter referred to as DAI), domiciled at 202 Triumph House, 189 Regent Street, London, WiR7VVB, United Kingdom,

have agreed as follows.

## Article 1    Definitions

In this Agreement, the following terms shall have the meaning as set forth below (terms importing the singular to include references to the plural and vice versa).

"DCP" means Debt Conversion Program,

"Russian Debt" means a debt owing by the Government of Russia;

"Consolidation Agreement" means the Agreement of the Consolidation of the Debt of the S.R. Vietnam towards the Federation of Russia signed on September 13, 2000,

"Vietnamese Debt" means the debt owing by the Government of Vietnam to the Government of Russia, which is referred to in the Consolidation Agreement.

"Date of Cancellation" means the date that Ministry of Finance of the Federation of Russia or its nominee Vnesheconombank (hereinafter referred to as RMOF) makes cancellation for the Vietnamese debt in accordance with the Article 3.

"Russian Cancellation Notice" means a notice sent by RMOF to the VMOF relating to the cancellation of the Vietnamese Debt (Annex 1).

"Credit Notice" means a notice sent by Vnesheconombank to Vietcombank informing the cancellation of Vietnamese Debt out of the book.

## Article 2    Amount

The total amount is agreed to implement under this Agreement is up to a maximum aggregate amount of $US 500 (five hundred) million of the cancelled Vietnamese Debt principal outstanding in accordance with the Consolidation Agreement.

## Article 3    Procedures

(a) DAI will be in charge of regulating with the RMOF all necessary financial instruments, thereby proper approval is granted by RMOF and Russian Cancellation Notice is delivered to VMOF. DAI is sole responsible for arranging of funding, organizing the delivery of all necessary above financial instruments to RMOF or its nominees in accordance with the international legislation

(b) Within 3 working days from the day the VMOF received the Credit Notice made by Vnesheconombank in accordance with the Cancellation Notice and instruction of RMOF and sent through Vietcombank informing that the bank has deducted the

2

corresponding amount of outstanding debt to Vietnam, based on the letter of instruction sent to the VMOF by DAI, the VMOF undertakes to guarantee the payment and will transfer the funds to DAI in accordance with the item (c) of this Article. The original of the Russian Cancellation Notice will be sent to VMOF by RMOF or by DAI within 7 (seven) days later

(c) The amount of U.S Dollar payable by VMOF under each Russian Cancellation Notice shall be ████████ of the amount of the Vietnamese Debt that has been cancelled, which is stated in the respective Russian Cancellation Notice.

(d) Payments made by the VMOF to DAI shall be transferred to the account number and the bank appointed by DAI in written and by hand delivery. Upon the receipt of the fund transferred from VMOF, DAI has responsibility to send the confirmation letter by fax to VMOF. The account instructions or details are not to be changed during the course of this transaction.

## Article 4    Terms

This Agreement will expire on the date falling on the earlier of the date falling 360 (three hundred and sixty) days after the date of this Agreement and the date on which the Vietnamese Debt has been cancelled in full in accordance with this Agreement. The term of this Agreement may be extended by agreement in writing between the parties to this Agreement. In any case, this Agreement shall remain in force until the Parties fulfil their entire obligations stipulated in this Agreement.

## Article 5    Fees

There shall be no fees or charges applied by Vietnam and DAI on the execution of this Agreement.

## Article 6    Confidentiality

The parties hereto agree that this Agreement is and must remain confidential.

## Article 7    Amendments

This Agreement may not be modified or amended except by a written instrument executed by each of the parties hereto.

## Article 8    Laws and Jurisdiction

This Agreement is governed by and construed in accordance with laws of England.

All disputes between VMOF and DAI arising out or in connection with this Agreement shall be settled by arbitrating in accordance with the "Rules for Conciliation and Arbitration" of the International Chamber of Commerce in Paris, France. The applicable Law shall be the British Law.

The arbitration procedure shall take place in Paris, France. The arbitration award shall be accepted by the parties without any review or appeal and be fully binding.

3

Annex 1

## Russian Cancellation Notice

[Date]

Ministry of Finance of S.R. Vietnam
8 Phan Huy Chu - Hanoi
Fax: 84.48.26.22.66
Attention: External Finance Department

CC: DAI Synditrade Limited

Re.: Vietnamese Debt Cancellation under Debt Conversion Program

Dear Sirs,

The Russian Ministry of Finance hereby informs that the Vietnamese Debt with the amount of U.S. $ [amount] has been cancelled from [Date of Cancellation] by the Ministry of Finance of Russia through Vnesheconombank from the principle outstanding of the Vietnamese Debt of the Consolidation Agreement dated 13 September 2000.

The new principle outstanding of the Vietnamese Debt as of [date of Debt Cancellation] is U.S. $ [amount]. New payment schedule for the Vietnamese Debt will be amended and sent by Vnesheconombank to the Vietcombank.

----------

For and on behalf of
the Ministry of Finance of the Federation of Russia

5

### Article 9    Mandate

The VMOF undertakes to issue a mandate to DAI in this transaction as soon as this Agreement has come into force. VMOF will inform RMOF also.

### Article 10    Information

The contracting parties have elected their respective addresses for any correspondence, messages or notifications as follows:

**MINISTRY OF FINANCE**
Address: 8 Phan Huy Chu, Hanoi, Vietnam
Telephone: 84.48.26.27.88
Facsimile: 84.48.26.22.66
Attn.: Mr. Nguyen Thanh Do
        External Finance Department

**DAI Synditrade Ltd.**
Address: 202 Triumph House, 189 Regent Street
        London, W1R7WB, UK
Telephone: 44.0207.287.1700
Facsimile: 44.0207.287.3310
Attn : Mr. Alexander KIRZHNEV
        Managing Director

### Article 11    Effectiveness

This Agreement comes into force from the date of signing.

Done in Hanoi, on April 24, 2002 in two original copies in English language and being equally authentic.


For the Ministry of Finance
Of the Socialist Republic of Vietnam

For the DAI Synditrade Limited

4

17/09 XMOX 20:11 FAX 721 8455                VNESHEX.IKOSSANA                                  本00)
721 9453



# МИНИСТЕРСТВО ФИНАНСОВ РОССИЙСКОЙ ФЕДЕРАЦИИ

## ЗАМЕСТИТЕЛЬ МИНИСТРА

103097, Москва, ул. Ильинка, 9
Телефон: 112-68
Телефакс: 925-08-89

15.09.2002. № 25-01-01/927
Ва №

Mr. Le Thi Bang Tam

Vice-Minister of Finance
Socialist      Republic      of
Vietnam

Dear Mr. Vice Minister,

The Ministry of Finance of the Russian Federation presents its compliments and has the honour to inform you of the following.

Considering terms of the Contract of July 15, 2002, No. CPB-1, signed between the Ministry of Finance of the Russian Federation and DAI Syndirade Limited, the amount of Vietnamese debt towards Russia has been reduced by USD500,000,000.00 with a cancellation being applied to the amount of principal debt created under bilateral Agreement between Russia and Vietnam dated September 13, 2000.

Thus, the amount of outstanding principal debt owed by Vietnam towards Russia totals to USD1,061,542,055.46 as of August 5, 2002.

By the Ministry's authorization Vnesheconombank elaborated and agreed with Vietcombank a new repayment schedule for debt amounts, consolidated under the Agreement dated September 13, 2000.

Taking into account the above I would like to ask if the Ministry of Finance of the Socialist Republic of Vietnam could confirm the above mentioned modified repayment schedule in order to make necessary amendments to the appropriate agreement between Vnesheconombank and Vietcombank.

Please accept, Mr. Vice-Minister, the assurance of my highest esteem and respect.

Sincerely yours,

Deputy Minister of Finance
of the Russian Federation                                 Sergei I. Kolotukhin

FROM : VIP NATIONAL CLUB                          Jul-21-02  9:11PM;

FROM : 1                         PHONE NO. : 797 60 06

                                                        JUL. 19 2

   FROM : EFD-HOF                 PHONE NO. :

                                  PHONE NO.    84 4 8262788    Jul. 19 2002 01

   19/07 '02  16:24   ☎84 1 8241388          VIETCOMBANK H O    Jul. 19 2002 03:25P

NUMBER TELEX: 260207190003        AT 14:26:09
FROM: VIETCOMBANK H.O., HANOI
TO: 00192/IIBMHUMH   INTERNATIONAL INVESTMENT BANK MOSCOW
DATE: 19/07/2002
MT799 FREE FORMAT MESSAGE
:20:TRANSACTION REFERENCE NUMBER:
   007012602ILG8112
:19:NARRATIVE:
   WE REFER TO THE AGREEMENT DATED APRIL 24,
   2002 (THE AGREEMENT) BETWEEN THE
   MINISTRY OF FINANCE OF THE SOCIALIST
   REPUBLIC OF VIETNAM AND THE OAI
   SYNDITRADE LIMITED, 202 TRIUMPH HOUSE,
   189 REGENT STREET, LONDON, W1R7WB,
   UNDER THE AGREEMENT THE MINISTRY OF
   FINANCE OF THE SOCIALIST REPUBLIC OF
   VIETNAM HAS AN OBLIGATION TO REPAY TO
   THE BENEFICIARY IN INSTALMENTS UP TO THE
   AGGREGATE AMOUNT AFTER THE MINISTRY OF
   FINANCE OF
   THE RUSSIAN FEDERATION HAS DEDUCTED THE
   RESPECTIVE SUM AS STATED IN THE
   AGREEMENT OF OUTSTANDING PRINCIPAL OF
   THE INDEBTEDNESS OF THE SOCIALIST
   REPUBLIC OF VIETNAM TOWARDS THE RUSSIAN
   FEDERATION UNDER THE AGREEMENT BETWEEN
   THE GOVERNMENT OF THE RUSSIAN FEDERATION
   AND THE GOVERNMENT OF THE SOCIALIST
   REPUBLIC OF VIETNAM OF SEPTEMBER 13,2000
   WE, THE BANK FOR FOREIGN TRADE OF VIETNAM
   THE SOCIALIST REPUBLIC OF VIETNAM, HANOI
   (VIETCOMBANK), HEREBY ISSUE OUR
   IRREVOCABLE STANDBY LETTER OF CREDIT
   NO. 007012602ILG8112 BY ORDER AND FOR THE
   ACCOUNT OF THE MINISTRY OF FINANCE OF THE
   SOCIALIST REPUBLIC OF VIETNAM,
   IN FAVOUR OF THE OAI SYNDITRADE LIMITED,
   202 TRIUMPH HOUSE, 189 REGENT STREET,
   LONDON, W1R7WB, UK (THE BENEFICIARY),
   UP TO THE AGGREGATE AMOUNT OF USD
   75,000,000.00 (SAY: UNITED STATES
   DOLLARS SEVENTY FIVE MILLION) VALID UNTIL

NGUOI LAP: HOANG SONG HANG



SOVCO...
Вход N    2998
19 ИЮЛ 2002

FROM : VIP NATIOI - CLUB and LAMONT; 212:030804;

FROM : 1                        PHONE NO. : 797 60 86        Jul-21-02  9:12PM;

                                PHONE NO. :                        JUL. 1

FROM : EFD-HXF                                                    Jul. 19 2002

                                PHONE N? : 84 4 8262768          Jul. 15 2002 03:

19/07 '02  15:28    *06 4 BX41385

                                        VIETCOMBANK H O

NUMBER TELEX: 260207190004      AT 14:31:03
FROM: VIETCOMBANK H.O., HANOI
TO: 00193,IIMMRUHH    INTERNATIONAL INVESTMENT BANK MOSCOW
DATE: 19/07/2002
MT799 FREE FORMAT MESSAGE
:20:TRANSACTION REFERENCE NUMBER:
  007012.02IL88112
:79:NARRATIVE:
  SEPTEMBER 15, 2002
  AVAILABLE FOR PAYMENT AT SIGHT AGAINST
  PRESENTATION AT OUR COUNTERS THE
  FOLLOWING DOCUMENTS:
  1/ A STATEMENT SIGNED BY THE BENEFICIARY
  CERTIFYING THAT THE AMOUNT OF
  USD ..... MUST BE PAID BY THE MINISTRY
  OF FINANCE OF THE SOCIALIST REPUBLIC OF
  VIETNAM WITHIN THREE WORKING DAYS AFTER
  THE DATE VIETCOMBANK RECEIVED THE CREDIT
  NOTICE FROM THE BANK FOR FOREIGN
  ECONOMIC AFFAIRS OF THE USSR
  (VNESHECONOMBANK): RUSSIAN FEDERATION
  UNDER THE AGREEMENT IF ON THAT DATE THE
  MINISTRY OF FINANCE OF THE SOCIALIST
  REPUBLIC OF VIETNAM FAILS TO PAY.
  2/ ONE COPY OF CREDIT NOTICE SEND BY
  VNESHECONOMBANK TO VIETCOMBANK AND TO THE
  BENEFICIARY INFORMING THE CANCELLATION
  OF VIETNAMESE DEBT OUT OF BOOKS.
  THE BENEFICIARY'S STATEMENT MUST BE
  MARKED 'CLAIM THIS AMOUNT UNDER THE
  STANDBY LETTER OF CREDIT
  NO.007912402IL88112 DATED 190702 ISSUED
  BY THE BANK FOR FOREIGN TRADE OF VIETNAM
  AND CONFIRMED BY THE INTERNATIONAL
  INVESTMENT BANK'.
  WE HEREBY AGREE THAT ALL DOCUMENTS CLAIM
  IN COMPLIANCE WITH THE TERMS AND
  CONDITIONS OF THIS STANDBY LETTER OF
  CREDIT WILL BE DULY HONOURED ON DUE
  PRESENTATION.
  SPECIAL CONDITIONS:

Nguoi Lap: HOANG SONG HANG



VIETCOMBANK H.O. HANOI

FROM : EFD-MOP    PHONE NO. : 84 4 8262760    Jul. 19 2002 03:15PM P1

NUMBER TELEX: 210207190005    AT: 14:34:47
FROM VIETCOMBANK H.O., HANOI
TO: 00193/IIBMRUMM    INTERNATIONAL INVESTMENT BANK MOSCOW
DATE: 19/07/2002
(1799 FREE FORMAT MESSAGE
(20:TRANSACTION REFERENCE NUMBER:
    0070126021L88112
(79:NARRATIVE:
    A/ PARTIAL DRAWING(S) ALLOWED
    B/ THE RIGHTS AND CLAIMS DERIVING FROM
    THIS STANDBY LETTER OF CREDIT MAY NOT BE
    ASSIGNED BY THE BENEFICIARY.
    C/ ALL BANKING CHARGES AND COMMISSIONS
    OUTSIDE VIETNAM, IF ANY, ARE FOR THE
    BENEFICIARY'S ACCOUNT, WHETHER STATED
    OR NOT.
    D/ ALL PAYMENTS DERIVING FROM THE
    AGREEMENT AND THIS STANDBY LETTER OF
    CREDIT MUST BE MADE WITH THE FOLLOWING
    PAYMENT INSTRUCTIONS:
    DEUTSCHE BANK TRUST COMPANY AMERICAS,
    NEWYORK, SWIFT BIC BKTRUS33 A/C
    04029356 CHIPS UID059844 OF THE
    INTERNATIONAL INVESTMENT BANK IN FAVOUR
    OF THE DAI SYNDITRADE LTD, LONDON,
    MARYNS, UK A/C 200337190201601 WITH THE
    REFERENCE: UNDER THE AGREEMENT DATED
    APRIL 24, 2002.
    UNLESS OTHERWISE EXPRESSLY STATED, THIS
    STANDBY LETTER OF CREDIT IS SUBJECT TO
    THE UNIFORM CUSTOMS AND PRACTICE FOR THE
    DOCUMENTARY CREDIT ICC PUBLICATION
    NO.500 (1993 REVISION) AND TO THE
    INTERNATIONAL STANDBY PRACTICES (ISP98)
    ICC PUBLICATION NO.590
    THIS MESSAGE IS OPERATIVE INSTRUMENT.
    NO WRITTEN CONFIRMATION WILL FOLLOW.
    PLEASE ADVICE THIS STANDBY LETTER OF
    CREDIT TO THE BENEFICIARY WITH ADDING
    YOUR CONFIRMATION AND INFORM US OF THE
    EXECUTION BY RETURN AUTHENTICATED SWIFT.
    IT IS IMPERATIVE TO ADDRESS YOUR REPLY TO
    OUR REF. 0070126021L88112.

Nguoi Lap: HOANG SONG HANG

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) _Eugene Starski V. Alexander_
_Kirzhnev_

FILED
IN CLERKS OFFICE

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL

COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)). _2005 FEB -11 P 4: 03_

_____  I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

_____  II.     195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

_X_   III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

_____  IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

_____  V.     150, 152, 153.

05 10209 JLT

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

_none_

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
COURT?
                                                    YES         (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
PUBLIC INTEREST?   (SEE 28 USC §2403)
                                                    YES         (NO)
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                    YES          NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
28 USC §2284?
                                                    YES         (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                   (YES)         NO

   A.    IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

         (EASTERN DIVISION)            CENTRAL DIVISION            WESTERN DIVISION

   B.    IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
         GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

         EASTERN DIVISION              CENTRAL DIVISION            WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _Seth S. Stoffregen_
ADDRESS _29 Crafts St Suite 500 Newton, MA 02460_
TELEPHONE NO. _(617) 332-1300_

(Cover sheet local.wpd - 11/27/00)

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

*IN CLERKS OFFICE*

## I. (a) PLAINTIFFS

Eugene Starski

*'2005 FEB -2 A II: 05*

## DEFENDANTS

Alexander Kirzhner and DAI Synditrade Limited

(b) County of Residence of First Listed Plaintiff
Norfolk County, Massachusetts
(EXCEPT IN U.S. PLAINTIFF CASES)

*U.S. DISTRICT COURT DISTRICT OF MASS.*

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Seth Stoffregen    29 Crafts St. Stes00
Newton, MA 02460    (617) 532-1300

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC § 1332
Brief description of cause:
Breach of Contract, Unjust Enrichment, Conversion Fraud 93A violation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
none

JUDGE

DOCKET NUMBER

DATE
Feb 1, 2005

SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____