UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE STARSKI,<br>        Plaintiff<br><br>v.<br><br>ALEXANDER KIRZHNEV and<br>DAI SYNDITRADE LIMITED,<br>        Defendants | C.A. No.  05-CV10209 JLT |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

This is an action brought by a joint venturer against the other joint venturer and the corporation he subsequently set up for conversion, breach of contract, unjust enrichment, fraud and violations of M.G.L. c. 93A. As more fully set forth below, defendants' motion to dismiss should be denied as this Court has jurisdiction over these defendants, service of process was proper under Fed.R.Civ.P. 4 and the complaint sufficiently states a cause of action for both the fraud and the 93A claims. In conjunction with his opposition to defendants' motion to dismiss, plaintiff has also requested leave to amend the complaint and has attached his First Amended Complaint and Jury Demand to this memorandum.

**BACKGROUND**

The parties to this action were involved in a joint venture to act as intermediaries to facilitate the repayment of a debt owed by the government of Vietnam to the Russian Federation. Exhibit 1, Complaint ("Comp.") ¶¶ 10-14. The plaintiff, Eugene Starski ("Starski") and the

defendant, Alexander Kirzhnev ("Kirzhnev") both had significant business and political contacts which, when joined together, resulted in the repayment of approximately $1 Billion of the debt. Comp. ¶¶ 11-12, 23.  Starski and Kirzhnev had three meetings in Boston, Massachusetts to discuss this possible joint venture and at the third such meeting in the late summer 2000 they met at a restaurant on Newbury Street in Boston to finalize their negotiations.  Comp. ¶¶10-11; Affidavit of Eugene Starski ("Starski Aff.") ¶¶ 2-6, Affidavit of Gregory Lanin ("Lanin Aff.") ¶¶ 4-7, Amended Complaint ("Am.Comp.") ¶¶ 11-12.   Within a few short weeks of this meeting, on October 12, 2000, they entered into a written contract drafted by the plaintiff without assistance of counsel which formalized the terms of their verbal agreement.  Comp. ¶12.

Both the verbal and the written agreements set forth that in exchange for Starski introducing Kirzhnev to Sovico, the party in Vietnam that could bring the Vietnamese Ministry of Finance into the negotiations, Kirzhnev was to spilt all commissions and fees with Starski. Comp. ¶¶12-14.  The parties also agreed that the agreement would be binding on not just Kirzhnev individually but also any corporation or other entity, heirs, successors or designees that made contact or dealt with Sovico or the contacts Sovico introduced to Kirzhnev.  Exhibit 1, Comp. ¶ 13.  The duration of the provisions of the contract was to be five (5) years or until October 12, 2005. *Id*.

Kirzhnev was extremely accommodating and was very acquiescent during the negotiations regarding the mutual responsibilities of the parties, the amount of the commission or fee to be split and with virtually every term or condition of the proposed contract. Starski Aff., ¶ 7, Lanin Aff., ¶ 8, Am.Comp. ¶ 13. In retrospect, Kirzhnev was overjoyed in entering into any agreement which enabled him to obtain the access Starski had to the Vietnamese Ministry of

Finance because Kirzhnev had little interest in ever meeting his obligations under such an agreement. Starski Aff. ¶ 7, Lanin Aff. ¶ 8, Am.Comp. ¶ 42.

Some nine months after entering into the written agreement with Starski, Kirzhnev sold his Greenwich, Connecticut property for $5 million and moved his family into rental premises in Greenwich. Comp. ¶¶ 20-41. In addition, Kirzhnev liquidated or removed all of his significant financial assets from the United States and has subsequently concealed them in off-shore locations. Comp. ¶ 42. Kirzhnev and DAI subsequently entered into written agreements with Sovico and the Ministry of Finance of Vietnam. Exhibits 3 and 4. Starski has received no compensation whatsoever from Kirzhnev or DAI Synditrade Limited pursuant to the terms of the verbal and written agreements between the parties. Comp. ¶¶ 23, 25, 31, 35, 44 and 50.

## ARGUMENT

A Motion to Dismiss is properly granted only when viewing the allegations in the light most favorable to the plaintiff, no reasonable fact finder could conclude that the plaintiff is entitled to relief. *Aulson v. Blanchard,* 83 F.3d 123 (1st Cir. 1996).

The burden of demonstrating that the Massachusetts long-are statute applies is on the party asserting jurisdiction and the statute is to be read with much generosity of breadth. *Telco Communications, Inc. v. New Jersey State Firemen's Mut. Benev. Assn.,* 41 Mass.App.Ct. 225 (1996).

### I. SERVICE OF THE SUMMONS AND COMPLAINT WERE PROPER AND PROVIDED ADEQUATE NOTICE TO THE DEFENDANTS.

#### A. SERVICE OF PROCESS WAS PROPER WITH KIRZHNEV.

Kirzhnev was initially served the Summons and Complaint at his Connecticut address pursuant to Fed.R.Civ.P. 4(d) requesting that he accept voluntary service of the complaint. Kirzhnev's minor son, who is an invalid, permanently resides at this location along with his care-

giver and Kirzhnev resides at this location from time to time when he is not traveling internationally or when he is not at one of his other residences around the world. A person can have two or more dwelling houses or usual places of abode for purposes of Fed.R.Civ.P. 4(d). *National Development Co. v. Triad Holding Corp.,* 930 F.2d 253, 257 (2nd Cir. 1991). Mr. Kirzhnev is a highly mobile and affluent individual and it is unrealistic to interpret Rule 4(d) that such that an individual can only be served at one dwelling house or usual place of abode at which process may be left. *Id.* Since there was a well established physical relationship between the defendant and the dwelling house or usual place of abode, the service on Kirzhnev is valid.

In addition, the Declaration made by the server on the Return of Service indicated that the papers were served on the "[d]aughter of Alexander Kirzhnev (who would not give her name)" who was over the age of 18 years. A server's return of service will stand absent proof to the contrary. *Gottlieb v. Sandia American Corp.,* 452 F.2d 510, 514 (3rd Cir. 1971). Defendant contends, without support, that the service was left with Kirzhnev's housekeeper. Yet the Return of Service contradicts this and is controlling. *Id.*

**B. SERVICE OF PROCESS WAS PROPER WITH DAI SYNDITRADE.**

Plaintiff also sought DAI Synditrade to voluntarily accept service pursuant to Fed.R.Civ.P. 4(d). There was no response within thirty days so the plaintiff proceeded with service through a process server in Connecticut.

The Return of Service for DAI Synditrade was served on Kirzhnev at his Connecticut address where the process server stated the service was accepted "for DAI Synditrade Limited, c/o Alexander Kirzhnev, Managing Director" by Kirzhnev's daughter. Kirzhnev is the Managing Director of DAI Synditrade, which allegedly has offices at 202 Triumph House, 189 Regent Street, London, England but when plaintiff attempted to locate the offices of DAI

4

Synditrade, he learned that the building was totally empty of all tenants and was under construction. See attached Affidavit of Paul Hawkes. Moreover, plaintiff attempted to learn if there was an agent set up in the British Virgin Islands for acceptance of service but that information was unobtainable. Essentially, the corporation had no location other than the location of its two officers, both of whom travel extensively internationally. Thus plaintiff elected to serve the Summons and Complaint for DAI Synditrade on Kirzhnev, the Managing Director. Since he maintains multiple residences and places of abode and is seldom at his residence, it was virtually impossible to predict where Kirzhnev will be at any point in time to serve him in his official capacity as the Managing Director. Moreover, Kirzhnev was served both in his individual capacity as well as in his representative capacity. *Gottlieb*, 452 F.2d 510, 514.

If this Court deems that service on DAI Synditrade does not comport to the Federal Rules, then plaintiff requests additional time to perfect the service of the elusive, non-existent corporation.

## II. THIS COURT HAS JURISDICTION OVER BOTH DEFENDANTS.

The Massachusetts long-arm statute recognizes both specific personal jurisdiction, where the cause of action arises out of defendant's activity in the commonwealth, and general personal jurisdiction, where the cause of action does not concern defendant's activity in the commonwealth, but defendant engages in a persistent course of conduct, or derives substantial revenue from goods, in the commonwealth. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 184 F.Supp.2d 55 (D.Mass. 2001); *Steego Corp. v. Ravenal*, 830 F.Supp. 42 (D.Mass. 1993). Specific jurisdicition involves a nexus between the relationship of the forum to

the defendant and the nature of the litigation. *Helicopteros Nacionales de Colom., S.Am. v. Hall*, 466 U.S. 408, 414 (1984). The Massachusetts long-arm statute is construed broadly in order to effectuate Commonwealth's legitimate desire to protect its citizens. *Bartow v. Extec Screens and Crushers, Ltd.*, 53 F.Supp.2d 518 (D.Mass. 1999). In determining whether there were sufficient contacts in the commonwealth in the conduct of the defendant's business to warrant the imposition of personal jurisdiction, a qualitative as well as quantitative analysis of activities engaged in by the defendant is required and jurisdiction is proper when examining the totality of the defendant's contacts with the forum. *Aub v. Technicolor Entertainment Services*, 224 F.Supp.2d 371 (D.Mass. 2002).

### A. JURISDICTION EXISTS OVER DEFENDANT KIRZHNEV.

For defendant to be subject to personal jurisdiction under the Massachusetts long-arm statute on ground of transacting business within the commonwealth, defendant must have transacted business in Massachusetts and plaintiff's claim must have arisen from the transaction of such business. *Digital Equip. Corp. v. AltaVista Technology, Inc.*, 960 F.Supp 456 (D.Mass. 1997).

According to the Complaint and the attached affidavits of both Eugene Starski and Gregory Lanin, defendant Kirzhnev had three meetings with Starski to discuss and negotiate a joint venture concerning eventual dealings with Sovico which led to the contacts resulting in the repayment of $1 billion debt owed by Vietnam to the Russian Federation. While plaintiff contends that only one such meeting is required to establish a nexus under the long-arm statute if that meeting resulted in an agreement between the parties, certainly three such meetings, all directly related to attempting to reach an agreement would constitute sufficient minimum contacts to establish jurisdiction under the Massachusetts long-arm statute. *See Home Owners*

*Funding Corp. of America v. Century Bank,* 695 F.Supp. 1343 (D.Mass. 1988)(jurisdiction over Arizona bank proper where bank transacted business in Massachusetts by negotiating agreement for sale of mortgage service business to mortgage servicing business in Massachusetts and caused tortious injury in Massachusetts by alleged negligent misrepresentations made during course of negotiations); *see also Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661 (1st Cir. 1972)(agent of non-resident corporation made misrepresentations to plaintiff within Massachusetts, non-resident corporation subject to personal jurisdiction); *Palandjian v. Pahlavi,* 586 F.Supp. 671 (D.Mass. 1984)(long-arm authorized court to assert jurisdiction over claim for breach of contract entered into in Massachusetts for construction of resort in Iran).

Plaintiff also notes that aside from the activities of Kirzhnev in striking a deal in Massachusetts, the contract that he signed also had a choice of law clause signifying that the agreement would be governed and interpreted according to Massachusetts law. While this in itself does not establish jurisdiction over the defendant, it certainly is evidence that defendant purposefully availed himself of the privilege of acting within the forum state and thus invoking the benefits and protections of its laws. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985).

### B. JURISDICTION ALSO EXISTS OVER DEFENDANT DAI SYNDITRADE.

Courts in the United States as well as Massachusetts have generally held that promoter's contracts made on the corporation's behalf may be adopted, accepted or ratified by the corporation when later organized, and that the corporation is then liable, both in law and equity, on the contract itself, and not merely for the benefits which it has received. *Framingham Sav. Bank v. Szabo,* 617 F.2d 897 (1st Cir. 1980), *see* Fletcher Cyclopedia of the Law of Private Corporations, § 207 (2004); *see also Maurice Pierce & Assoc., Inc. v. Computerage, Inc.,* 608

7

F.Supp. 173 (ND Tex 1985)(where a promoter executes a contract on behalf of a proposed corporation, the contract is enforceable against the corporation if the corporation subsequently comes into existence and ratifies or otherwise accepts benefits of the contract).

Moreover, federal courts have found that the preincorporation activities of a promoter, later ratified by a corporation, could be considered in evaluating in personam jurisdiction under the state's long-arm statute. *Rees v. Mosaic Technologies, Inc.*, 742 F.2d 765, 768-769 (3rdCir. 1984). While case law is sparse regarding whether the pre-incoproration contacts of an individual can be attributed to a corporation for purposes of analyzing personal jurisdiction courts have found that it is not unreasonable to attribute the actions of the pre-incorporator to those of the corporation which ultimately benefits from the acts of the plaintiff. *Burlington Industries, Inc. v. Yanoor Corp.*, 178 F. Supp2d 562, 568 (M.D.N.C. 2001).

The *Rees* court reasoned that when a defendant has entered into a contract that it knows will be performed by the plaintiff substantially in the forum state, the defendant purposefully avails itself of the privilege of acting in the forum state by knowingly entering into such a contract and thus, the defendant corporation could reasonably anticipate litigation in the forum state. *Rees,* 742 F.2d at 769. Here, defendant Kirzhnev acting as a promoter for the later formed DAI Synditrade, entered into negotiations and reached an agreement in Massachusetts with the plaintiff to provide services to the later formed corporation. The parties were very clear of their intent at the time they made their agreement at Charlie's in Boston. When that verbal agreement was subsequently formalized and affirmed in writing, the written agreement made it clear that Kirzhnev or his corporation would be bound to the agreement and that the parties to the agreement meant to bind themselves and any "successors, assigns and/or designee(s) now and for

8

the life of this agreement." See Exhibit 1 to the Complaint. The agreement covered a period of five (5) years. *Id.* DAI Synditrade did in fact benefit from Starski's actions.

For the foregoing reason, both defendants motion to dismiss for lack of personal jurisdiction should be denied.

### III. PLAINTIFF'S FRAUD COUNT IS SUFFICIENT TO SATISFY THE PLEADING REQUIREMENTS BUT PLAINTIFF WILL FILE AN AMENDED COMPLAINT WITH LEAVE OF COURT TO CORRECT ANY PERCEIVED DEFICIENCIES.

Under Fed.R.Civ.P. 9(b) fraud must be plead with particularity and as such the complaint must contain allegations of fraud with sufficient detail as to the time, place and nature of the alleged fraudulent activities and the circumstances constituting fraud. *Lazzaro v, Holladay,* 15 Mass.App.Ct. 108, 110-111 (1983). If fraud allegations are deficient, the pleader should liberally be granted the opportunity to amend. *Saltmarsh v. Saltmarsh*, 395 Mass. 405, 412 (1985).

While plaintiff contends that the complaint does satisfy the requirements of Rule 9(b), such an argument seems wholly unnecessary given plaintiff's motion for leave to file an amended complaint and his proposed amended complaint.

### IV. PLAINTIFF HAS ESTABLISHED A CLAIM UNDER M.G.L. c. 93A.

The written contract between Starski and Kirzhnev/DAI Synditrade contained a choice of law provision which designated Massachusetts law as controlling the performance under the contract. Plaintiff contends that the choice of law provision opened the door for the application of M.G.L.c. 93A regardless of where most of the unfair or deceptive business practices occurred. *Cf. Scheck v. Burger King Corp.*, 756 F.Supp. 543, 546 (S.D. Fla. 1991)(choice of law provision selected law of Florida which controls even if most of the actions occurred in Massachusetts).

Notwithstanding, the actions of Kirzhnev, and later adopted by DAI Synditrade, did in fact occur in Massachusetts when the agreement was entered into which Kirzhnev never had any intention of fulfilling. Defendants' actions were both Massachusetts based and are tied to Massachusetts via the choice of law provisions in the contract. Accordingly, the plaintiff's M.G.L.c. 93A claim is appropriate and should not be dismissed.

## CONCLUSION

For the foregoing reasons the defendants' Motion to Dismiss for insufficient service of process, lack of personal jurisdiction and failure to state both the fraud and the 93A unfair business practices claim should be denied.

Respectfully submitted,
EUGENE STARSKI
By his attorney,

_____
Seth S. Stoffregen (BBO# 567900)
Chatham Center
29 Crafts Street, Suite 500
Newton, MA 02460
(617) 332-1300

Dated: May 2, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May 2005, a copy of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was served on Peter Charles Horstmann, Esq., Partridge, Ankler & Horstmann, LLP at 200 Berkeley Street, 16th Floor, Boston, Massachusetts 02116 by first class mail.

_____
Seth S. Stoffregen

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EUGENE STARSKI,<br>      Plaintiff<br><br>v.<br><br>ALEXANDER KIRZHNEV and<br>DAI SYNDITRADE LIMITED,<br>      Defendants | C.A. No. 05-CV10209 JLT |

## AFFIDAVIT OF EUGENE STARSKI IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

I, Eugene Starski, hereby depose and state as follows:

1. I am an adult resident of the Commonwealth of Massachusetts residing in Brookline. I am a citizen of the United States. I am the plaintiff in the above-referenced action. I make these statements contained in this affidavit based on my own personal knowledge.

2. In 2000 I met with Alexander Kirzhnev on three separate occasions in the Boston, Massachusetts area regarding a joint business venture.

3. The first meeting occurred with Kirzhnev and Alexander Braginsky when I met them for lunch in Boston in the summer of 2000. Kirzhnev and I discussed a possible joint venture involving bring parties together to facilitate the repayment of the Vietnam debt owed to the Russian Federation.

4. The second meeting I had with Kirzhnev occurred in summer of 2000 at the 4 Seasons Hotel in Boston. We met briefly over coffee and discussed financial

arrangements concerning our possible joint venture. We discussed a fifty/fifty split of any fees or commissions earned as a result of out joint efforts.

5. A few weeks later, I had a third meeting involving Kirzhnev which occurred at Charlie's Eating and Drinking Saloon ("Charlie's") on Newbury Street in Boston in the late summer of 2000.

6. During this third meeting at Charlie's, Kirzhnev and I discussed all of the pertinent aspects of our agreement including the fact that our agreement would be binding on him, any partners he may eventually have and any other business entity he established regarding the Vietnam debt transaction. We also discussed that our agreement was to be for a five year period and included any transactions of any nature which resulted from Kirzhnev's contact with Sovico.

7. I indicated to Kirzhnev that I had developed a long-standing relationship with Sovico, the party in Vietnam that would be facilitating the meeting with the Vietnam Ministry of Finance, and I would be able to introduce Kirzhnev to Sovico and, in turn, to the Vietnam Ministry of Finance. Throughout our entire discussion Kirzhnev was extremely accommodating and very interested in entering into a written agreement so we could get started. At no time during our negotiations do I recall Kirzhnev demanding or requiring any specific terms or conditions to our agreement.

Sworn to and signed under the pains and penalties of perjury this 2 day of May 2005.

_____
Eugene Starski

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EUGENE STARSKI,<br>    Plaintiff<br><br>v.<br><br>ALEXANDER KIRZHNEV and<br>DAI SYNDITRADE LIMITED,<br>    Defendants | )<br>)<br>)<br>)<br>)  C.A. No. 05-CV10209 JLT<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF GREGORY LANIN IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

I, Gregory Lanin, hereby depose and state as follows:

1. I am an adult resident of the Commonwealth of Massachusetts residing in Chestnut Hill. I am a citizen of the United States. I make these statements contained in this affidavit based on my own personal knowledge.

2. I have twenty years experience as a consultant in the oil industry and maintain offices in both Moscow, Russia and Newton, Massachusetts.

3. I have known the plaintiff, Eugene Starski ("Starski") for approximately twenty-five (25) years.

4. I have met with both the defendant, Alexander Kirzhnev ("Kirzhnev") and Starski in joint meetings in Boston on at least two separate occasions.

5. The first meeting I attended occurred in the summer of 2000 at the 4 Seasons Hotel in Boston. Kirzhnev and Starski met briefly over coffee and discussed financial arrangements concerning their possible joint venture to negotiate an

agreement between Vietnam and the Russian Federation over a debt owed by Vietnam.

6. A few weeks later, I attended a second meeting involving both Starski and Kirzhnev which occurred in Boston in the late summer of 2000. The meeting was at Charlie's Eating and Drinking Saloon ("Charlie's") on Newbury Street in Boston.

7. During this second Boston meeting at Charlie's I heard a lot of the discussion between Starski and Kirzhnev. While much of the conversation occurred mainly between Kirzhnev and Starski, I do remember them discussing that there would be a 50/50 split of any fee or commission received and that all transactions involving Sovico, the party in Vietnam, would be covered under this arrangement. In addition, I recall them agreeing that the agreement would be for a five year period.

8. Starski advised Kirzhnev that he would be able to introduce Kirzhnev to Sovico and, in turn through Sovico to the Vietnam Ministry of Finance. Throughout the entire discussion between Starski and Kirzhnev, there was complete agreement and congeniality. I specifically recall Kirzhnev readily agreeing to all the terms Starski had discussed and at the end of the meeting Kirzhnev got up and hugged Starski. Kirzhnev told him that if the deal went through he would get Starski a Ferrari automobile as a token of his appreciation.

Sworn to and signed under the pains and penalties of perjury this 2 day of May 2005.

_____
Gregory Lanin

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EUGENE STARSKI,<br>    Plaintiff<br><br>v.<br><br>ALEXANDER KIRZHNEV and<br>DAI SYNDITRADE LIMITED,<br>    Defendants | )<br>)<br>)<br>)<br>)  C.A. No. 05-CV10209 JLT<br>)<br>)<br>)<br>)<br>) |

## **AFFIDAVIT OF PAUL HAWKES**

I, Paul Hawkes, a Professional Investigator of 282 Latimer Road, London W10 6QW, England, UK, **MAKE OATH** and say as follows:-

1  That for the purpose of this enquiry, I was employed by Mr. Seth S. Stoffregen, Counsellor At Law of 29 Crafts Street, Suite 500, Newton, MA 02460, USA who represents in this matter, Mr. Eugene Starski and is the plaintiff's attorney.

2  Recently Mr. Seth S. Stoffregen did instruct me to make enquiries into a company named DAI Synditrade Limited, a British Virgin Islands Corporation, of which Mr Alexander Kirzhnev is the Managing Director, and which in the past did supply its trading address as being 202 Triumph House, 189 Regent Street, London W1B 4AT, England UK. Specifically, my instructions from Mr. Seth S. Stoffregen were to focus on physically inspecting the offices within 202 Triumph House, 189 Regent Street, London W1B 4AT, England UK, to verify whether or not of DAI Synditrade Limited maintain offices at this location.

3  I personally attend 189 Regent Street, London W1B 4AT, England UK, this being a part of a larger property known as 185 -191 Regent Street, London W1B 4AT, England UK. The whole property known as 185 -191 Regent Street, London W1B 4AT, England UK, which incorporates the property known as 202 Triumph House, 189 Regent Street, London W1B 4AT, England UK, is now a construction site and is not accessible to the general public.

4  That I did note that signs affixed to the outside walls of 185 -191 Regent Street, London W1B 4AT, England UK, state that the construction is due 'to be completed in spring 2006' and the relevant Construction Company is named 'Skanska' and the relevant Security Company is named 'Eagleguard'.

5  Whilst attending 185 -191 Regent Street, London W1B 4AT, England UK, I did personally speak with a male who identified himself only as Sam, an employee of Eagleguard Security. 'Sam' did state to me that he was employed as a security guard situated at the building now identified as being 185 -191 Regent Street, London W1B 4AT, England UK, and that to his knowledge, the whole of the building was completely empty and under construction. Sam declined to allow me to enter 185 -191 Regent Street, London W1B 4AT, England UK personally.

6  Whilst attending 185 -191 Regent Street, London W1B 4AT, England UK, I did view all public entrances and saw them to be professionally boarded-up; and did not that all viewable upper storey windows appeared to me as unoccupied.

7  I am satisfied to my reasonable knowledge that DAI Synditrade Limited is *not* using any part of 185 -191 Regent Street, London W1B 4AT, England UK as an office.

Sworn to and signed under the pains and penalties of perjury this ___ day of May 2005.


_____
Paul Hawkes



This ___ day of May 2005

Before me  _____

A Solicitor/Commissioner for Oaths